# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

JIMMY D. EDWARDS,

        Plaintiff,

v.

LT. DILLARD, et al.,

        Defendants.

No. CIV 13-396-RAW-SPS

## OPINION AND ORDER

This action is before the court on Defendants Dillard and Richardson's motion to dismiss or for summary judgment. The court has before it for consideration plaintiff's complaint, the defendants' motion, and a special report prepared by the Oklahoma Department of Corrections (DOC) at the direction of the court, in accordance with *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978).

Plaintiff, a former DOC inmate, brings this action under the authority of 42 U.S.C. § 1983, seeking relief for alleged constitutional violations during his incarceration at Howard McLeod Correctional Center (HMCC) in Atoka, Oklahoma. The defendants are HMCC Officers Lt. Tod Dillard, CSO Julie Richardson, Correctional Officer Karri Allen, and CSO Marler.[1, 2]

Plaintiff alleges that on May 3, 2012, he was sexually harassed and ridiculed by the defendants, in violation of the Eighth Amendment prohibition against cruel and unusual punishment. He claims that on that date he was called over the loud speaker to come to Central Control. When he arrived, Defendant Richardson said she did not need to see him,

---

[1] To the extent the defendants are sued in their official capacities as DOC officials, plaintiff's claims are barred by the Eleventh Amendment. It is well settled that a damages suit against a state official in his official capacity is merely another way of pleading an action against the State. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985). *See also Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1988) (state officials sued in their official capacities are not "persons" for purposes of a § 1983 suit, because the suit is against the official's office and not against the official).

[2] Defendants Allen and Marler have not been served.

so he left. Upon returning to his cubicle, other inmates told him he was being called again, so he doubled back and saw Defendant Marler in the hallway. Marler told him to go into the office, where Marler asked him if he could pass a urinalysis. Because of prior harassment by Marler and other officers, plaintiff asked Marler if Marler could pass a steroid test. Defendant Richardson demanded to know if plaintiff could pass a urine test, and plaintiff asked her, "Can you?" Dillard allegedly became irate and vulgar and told Marler to take plaintiff to the bathroom where Marler gave him a cup for the test. Plaintiff had difficulty urinating, and Marler told him to move over so Marler could observe, and Marler began to stare at plaintiff's private parts. After plaintiff finished urinating, both men went to the control room, then Marler entered the lieutenant's lounge.

Five minutes later, the door opened and Dillard yelled loudly, "This is not temperature. What the fuck is this shit?" Plaintiff replied, "Surely your officer knows, he insisted on seeing me, ask him." Dillard allegedly angrily yelled racial slurs at plaintiff and demanded that he come into the lounge with Marler.

Plaintiff then was stripped of all his clothing, leaving him completely naked. He asserts he has a "little-man complex which is nature's fault." (Dkt. 1 at 7). The officers completely searched his clothes and then his body parts, raising his private parts and checking under his arms. He next was told to stoop and spread his buttocks. After being in this position for a long time, plaintiff began to cry. He finally was allowed to stand up and turn around, but had to stand in the cold room with the air conditioner at a high level for 15-20 minutes. Defendants Dillard and Marler allegedly cracked jokes about plaintiff's "small package" and laughed at him. He asked to get dressed and whether he could go. They refused to let him dress and leave, ordering him to shut up and stand with his hands by his side. After a while, he was allowed to put on his clothes.

Plaintiff returned to the control room with the officers, and Defendants Allen and Richardson, both female officers, came into the room. Dillard and Marler began telling the two female officers about plaintiff's "small package" and told hurtful jokes about him in

2

front of the women. For the rest of the day, whenever the two female officers saw plaintiff, they laughed and pointed at him and made "small penis size gestures with their fingers." One of the women continued this behavior into the next day, ridiculing and humiliating plaintiff.

Plaintiff claims that this unreasonable search, intentional humiliation, and infliction of emotional distress resulted in his loss of sleep, depression, and mental fatigue. He contends his right of privacy and his right not to be subjected to cruel and unusual punishment were violated. He further maintains there was no need for him to be strip-searched after the urinalysis, and forcing him to stand nude and in a position with his buttocks spread while being verbally abused was a malicious and sadistic use of force. Furthermore, the other inmates were not subjected to this treatment.

Defendants Dillard and Richardson allege, among other things, that plaintiff has failed to exhaust the administrative remedies for his claims. "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Inmates are required to exhaust available administrative remedies, and suits filed before the exhaustion requirement is met must be dismissed. *Booth v. Churner*, 532 U.S. 731, 740-41 (2001); *Yousef v. Reno*, 254 F.3d 1214, 1216 n.1 (10th Cir. 2001). "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under PLRA for failure to exhaust his administrative remedies." *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) (citation omitted). In deciding a motion to dismiss based on nonexhaustion, the court can consider the administrative materials submitted by the parties. *See Steele v. Fed. Bureau of Prisons*, 355 F.3d 1204, 1212 (10th Cir. 2003), *abrogated in part on other grounds, Jones v. Bock*, 549 U.S. 199 (2007).

According to the DOC Offender Grievance Process, OP-090124, an inmate first must attempt to resolve his complaint informally by communicating with staff within three days of the incident. If that is unsuccessful, he may submit a Request to Staff (RTS) within seven

calendar days of the incident. If the inmate does not receive a response to his RTS within 30 days, he may file a grievance to the reviewing authority (warden's office), stating he has submitted a RTS but received no response.

If the response to the RTS does not resolve the complaint, an inmate may file a grievance. If the grievance also does not resolve the issue, the inmate may appeal to the Administrative Review Authority (ARA) or the Chief Medical Officer. The administrative process is exhausted only after all of these steps have been taken. *See* DOC Policy OP-090124 (Dkt. 19-1 & 19-2).

The defendants point out that two kinds of grievances can be filed: (1) emergency or sensitive grievances for special matters, and (2) normal grievances. (Dkt. 19-2 at 2). Sensitive grievances are used to report "misconduct by a staff member who either directly supervises the offender or is the reviewing authority where the offender is assigned." *Id.* If a grievance is determined not to be an sensitive in nature, it will be returned, and the standard grievance process must be followed. *Id.* at 3.

Plaintiff's admits in his complaint that he has not exhausted the available administrative remedies for his claims, because he "was obstructed each time that I had tried to exhaust I was in SHU at HMCC & for reasons unknown my RTS's [sic] kept getting mysteriously lost & Grievances weren't answered." (Dkt. 1 at 5). Attached to the complaint are two grievances filed at HMCC and dated July 30, 2012. In the first grievance, directed to Warden Bruce Howard, plaintiff claims he submitted a RTS to HMCC Chief Shelite on approximately May 14, 2012. (Dkt. 1 at 10). He claims Chief Shelite never responded, so he requested the reviewing authority to require a response to his RTS. *Id.* The second, also directed to Warden Howard, claims he submitted a RTS to Unit Manager Ron Allen on approximately May 5, 2012. (Dkt. 1 at 12). Again, plaintiff asked the reviewing authority require a response to his RTS. *Id.*

The record shows that both grievances were returned to plaintiff unanswered on August 8, 2012, because they were deemed out of time. (Dkt. 18-2 at 4, 7). After receiving

4

the grievance responses, he attempted to appeal to the ARA on August 14, 2012, stating the reviewing authority had misconstrued his grievances as an appeal of the issues of the alleged incident, as opposed to the fact he was grieving the failure to respond to his Requests to Staff. (Dkt. 18-3 at 3). According to the respondent, plaintiff's attempts to exhaust his administrative remedies failed to comply with the grievance policy in the following respects:

- Plaintiff's RTS to Chief Shelite was address to the wrong individual and utilized the wrong form. Because he was complaining of "misconduct by a staff member who . . . directly supervises" him, he should have submitted a "sensitive" grievance directly to the reviewing authority. *See* OP-090124 § VIII.A.2-4.

- Plaintiff's RTS submitted to Chief Shelite on May 14, 2012, was out of time. He alleges the strip search occurred on May 3, 2012. A RTS must be submitted within seven calendar days of the incident. Plaintiff's RTS was four days late. *See* OP-090124 § IV.B.2.

- Plaintiff's appeal to the ARA via the Misconduct/Grievance Appeal Form to ARA was submitted on the wrong form. Plaintiff was appealing the lack of a response by the reviewing authority to the ARA, not the decision of the reviewing authority. Instead of an appeal form, he should have filed a grievance with the ARA. *See* OP-090124 § V.C.4.

- Plaintiff requested the wrong relief in his appeal to the ARA, even if he had used the correct form. He requested that the ARA require Chief Shelite to answer the RTS he submitted approximately on May 14, 2012. The policy requires that the grievance submitted to the ARA "assert only that the offender's grievance was not answered." *See* OP-090124 § V.C.4.

- Finally, even if plaintiff had submitted an appropriate request on the correct form, he was out of time. Once the response from the reviewing authority was received, he had fifteen days to submit his appeal to the ARA. *See* OP-090124 § VII.B. Plaintiff received a memo from the reviewing authority on August 8, 2012, but his appeal form was not received by the ARA until October 5, 2012.

After careful review, the court finds plaintiff has failed to exhaust the available administrative remedies for his claim. Therefore, this action must be dismissed.

**ACCORDINGLY,** the defendants' motion to dismiss (Dkt. 20) is GRANTED, and this action is DISMISSED WITHOUT PREJUDICE for failure to exhaust available administrative remedies, pursuant to 42 U.S.C. § 1997e(a).

IT IS SO ORDERED this 11th day of September 2014.

_____
RONALD A. WHITE
UNITED STATES DISTRICT JUDGE